UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Red Bluff Trade Center, LLC and Red Bluff Rock, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 4:17-cv-03354-SAL |
| v. | ) ) ) | **OPINION AND ORDER** |
| Horry County and Horry County Council, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on the parties' cross-motions for partial summary judgment. ECF Nos. 39, 40. At issue is whether state law preempts Horry County ordinances regulating mining. Plaintiff Red Bluff Rock, LLC obtained the necessary mining permit pursuant to state law; however, it was prohibited from operating a mine after Defendant Horry County Council denied applications for a mine permit required by local ordinance. Arguments were heard on March 31, 2020, and this matter is ripe for the Court's consideration.

## BACKGROUND

In October 2007, Plaintiff Red Bluff Trade Center, LLC ("RBTC") purchased a 53.83-acre parcel of real estate situated in Horry County (the "Property"). Plaintiff Red Bluff Rock, LLC ("RBR") wishes to operate a mine on the Property to extract limestone, sand, and fill dirt. RBR obtained the necessary permit to operate the mine from the South Carolina Department of Health and Environmental Control ("DHEC") in August 2017, pursuant to the South Carolina Mining Act, S.C. Code Ann. §§ 48-20-10 to -310 ("Mining Act") and regulations promulgated thereunder. *See* S.C. Code Ann. Regs. 89-10 to -350. Plaintiffs further represent that they complied with Horry County Code of Ordinance, app'x B, art V, § 532 (the "Horry County Mine Zoning Ordinance"), which sets forth conditions for landowners' conditional use of land as a mine. Plaintiffs were not,

however, able to obtain a mine permit from Defendant Horry County Council, as required under Horry County Code of Ordinance, ch. 13, art. VI (the "Horry County Mine Permit Ordinance"). The parties' present dispute concerns whether state law preempts the Horry County Mine Permit Ordinance.[1] The Court begins with a brief discussion of the respective regulatory schemes governing mining put in place by South Carolina and Horry County.

## I.    The Interstate Mining Compact and the Mining Act

In 1972, South Carolina joined the Interstate Mining Compact by enacting S.C. Code Ann. §§ 48-21-10 to -30. This legislation recognizes that "[t]he states are in a position and have the responsibility to assure that mining shall be conducted in accordance with sound conservation principles, and with due regard for local conditions." *Id.* § 48-21-10(a)(5). The purposes of the Interstate Mining Compact include "assist[ing] the party states in their efforts to facilitate the use of land and other resources affected by mining, so that such use may be consistent with sound land use, public health, and public safety . . . ." *Id.* § 48-21-10(b)(4). Pursuant to Section 10, Article III of the Interstate Mining Compact, each member state agreed that it would "formulate and establish an effective program for the conservation and use of mined land" to accomplish, among other things, "[t]he protection of the public and the protection of adjoining and other landowners from damage to their lands and the structures and other property thereon resulting from the conduct of mining operations." In addition, state programs are to establish mining standards "in ways that will reduce adverse effects on the economic, residential, recreational or aesthetic value and utility of

---

[1] The Plaintiffs argued in their written motion for summary judgment that the Horry County Mine Permit Ordinance and Horry County Mine Zoning Ordinance were preempted by the Mining Act. With respect to the argument regarding the Horry County Mine Zoning Ordinance, however, Plaintiffs' counsel clarified during the hearing on this matter that, while Plaintiffs' motion, ECF No. 40, seeks a declaration that the entire Horry County Mine Zoning Ordinance is preempted, they only take issue with the cross-reference to the Horry County Mine Permit Ordinance.

land and water." *Id.* Thereafter, South Carolina passed the Mining Act, S.C. Code Ann. §§ 48-20-10 to -310.

The Mining Act has two stated purposes: to provide that (1) "the usefulness, productivity, and scenic values of all lands and waters involved in mining within the State receive the greatest practical degree of protection and restoration;" and (2) "no mining may be carried on in the State unless plans for the mining include reasonable provisions for the protection of the surrounding environment and for reclamation of the area of land affected by mining." S.C. Code Ann. § 48-20-20. The Mining Act grants DHEC the authority to issue mining permits, S.C. Code Ann, § 48-20-30, and provides that DHEC has ultimate authority over all mining, and the regulation and control of mining activity. *Id.* Under the Mining Act, no operator may engage in mining unless DHEC has issued a permit for the proposed mine. *Id.* § 48-20-60. Permits may only be issued or modified as set forth in the Mining Act and regulations promulgated thereunder. *Id.*; *see also* S.C. Code Ann. § 48-20-70; S.C. Code Ann. Regs. 89-10 to -350.

The Mining Act also allows for localities to pass and enforce zoning laws, provided they are consistent with the Mining Act:

> No provision of this chapter supersedes, affects, or prevents the enforcement of a zoning regulation or ordinance within the jurisdiction of an incorporated municipality or county or by an agency or department of this State, except when a provision of the regulation or ordinance is in direct conflict with this chapter.

S.C. Code Ann. § 48-20-250. The General Assembly thus, in enacting the foregoing language, expressly saved non-conflicting zoning laws from preemption.

## II.     Horry County's Ordinances Regulating Mining

### A.     The Horry County Mine Zoning Ordinance

The South Carolina Local Government Comprehensive Planning Enabling Act of 1994, S.C. Code Ann. §§ 6-29-310 to -1640 ("Planning Enabling Act") "authorizes local governments

in South Carolina to adopt zoning ordinances to regulate land use within their jurisdictions." *Cty.*

*of Charleston v. S.C. Dep't of Transportation*, 803 S.E.2d 316, 317 (Ct. App. 2017). In accordance

with the authority conferred by the Planning Enabling Act, Horry County enacted its zoning

ordinance. *See* Horry County Code of Ordinance, app'x B, art. I.

On February 7, 2006, prior to RBTC's purchase of the Property, Horry County Council

created the Horry County Mine Zoning Ordinance by passing Horry County Ordinance 141-05,

setting forth requirements for the conditional use of land as a mine. *See* Horry County Code of

Ordinance, app'x B, art. V, § 532. The Horry County Mine Zoning Ordinance provided as follows:

> Unless exempt, a certificate of zoning compliance[2] must be obtained by the property owner or operator of any mining operation prior to removal of excavated materials to be hauled off-site. If all excavated material is kept on-site, no review or approval is required. The following levels of review and approval are hereby established for mining operations where the excavated material is hauled off-site.
>
> *        *        *
>
> 4. All other mining activity shall be allowed only as a conditional use in the AG1, AG2, FA and CFA zoning districts subject to the following conditions:
>    a) A pre-construction meeting with county engineering must be held to assess road conditions and develop a maintenance plan, regarding grading and watering, that addresses impacts of the mining operation to include dust in populated areas and road conditions.
>    b) Mine operator must maintain paved roads accessing site for two hundred (200) feet of site access in the direction of travel and control dust in populated areas.
>    c) Mining operations must be screened and buffered by a six (6) foot high opaque screen of natural vegetation within a one hundred (100) foot buffer area or a six (6) foot high berm within a fifty (50) foot buffer area. Berms must be graded, shaped and grassed. Provided, however, that no screen is required along any property boundary where the mining operations are setback five hundred (500) feet, or more from the property line. These screening and buffering provisions shall supercede the requirements of the landscape, buffer and tree preservation standards.
>    d) Mine operator will submit a traffic routing plan to county engineering. Traffic plan should minimize impacts to surrounding residences to the greatest reasonably extent possible. Reasonableness analysis should include but is not

---

[2] Certificates of zoning compliance are issued by the Zoning Administrator. Horry County Code of Ordinance, app'x B, art. XIII, § 1303.

limited to physical limitations and financial costs. Plan may be modified if conditions warrant.

e) Operational hours are 6:00 a.m. until 9:00 p.m. unless otherwise authorized by County Council. Hours may be extended for public projects of limited duration upon notice to the zoning administrator.

f) Mining operations will be conducted in accordance with Horry County and DHEC regulations. Mine operator will obtain a county stormwater permit.

g) Mining operations must be conducted in accordance with all county, state, and federal regulations.

Horry County Code of Ordinance, app'x B, art. V, § 532.

### B.     The Horry County Mine Permit Ordinance

On the same day the Horry County Mine Zoning Ordinance became law within "The Zoning Ordinance of Horry County, South Carolina," *see id.*, app'x B, art. II, Horry County also created a separate Horry County Mine Permit Ordinance, codified under "Offenses and Miscellaneous Provisions." *See* Horry County Code of Ordinance, ch. 13, art. VI. Again, this requirement was not included within the zoning ordinance regulatory scheme set out by Horry County. The Horry County Mine Permit Ordinance requires that all mining operations allowed as conditional uses pursuant to the zoning ordinance shall also "be required to obtain a mining permit pursuant to the provisions of this article." *Id.* § 60. The Horry County Mine Permit Ordinance sets forth application procedures:

To initiate a request for a mining permit, the following information shall be submitted to the county engineering department along with an administrative fee of two hundred fifty dollars ($250).

(1) Permit requests shall identify the property owner(s), parcel identification numbers of parcels for which the permit is sought, operator's name, address and telephone number.

(2) Applicant shall identify the nature of the material to be excavated, the duration of the DHEC approval sought and the acreage of staging and excavation areas.

(3) Upon request, applicant also may be required to furnish copies of all documents provided to DHEC, including, but not limited to, the reclamation plan for the site.

(4) A copy of the proposed road maintenance and traffic routing plans shall be provided.

      (5) Applicant shall specify days and times and propose ways of mitigating any negative impacts on surrounding property owners.

      (6) A mining permit application affecting the same parcel or parcels of property or part thereof cannot be initiated more than once every twelve (12) months.

*Id.* § 61. All requests for mining permits are placed on the Horry County Council agenda for a public hearing. *Id.* § 62. In determining whether to issue a mine permit, the Horry County Mine Permit Ordinance states that Horry County Council is to consider (1) "the adequacy of the transportation network," and (2) "compatibility with the surrounding community." *Id.* § 63.

## III.    Rezoning the Property to Allow Mining

When RBTC purchased the Property, mining was disallowed under the applicable Horry County zoning designation of "High Bulk Retail." On February 21, 2017, however, Horry County both rezoned the Property to "Commercial Agriculture" and made mining a conditional use on property so zoned. *See* Horry County Ordinances 06-17 and 13-17. The "Rezoning Review Sheet" associated with the Property, dated December 15, 2016, notes that the proposed use for the Property was mining. ECF No. 41-4 at 2. Twenty-six property owners were notified of the potential rezoning, but no public comment was received. A representative for Plaintiffs was present during the rezoning review to answer any questions. The narrative section states as follows:

> The applicant is requesting to rezone . . . in order to establish a mining operation . . . . To the South of the site, along Highway 905, is a convenience store in the Neighborhood Retail Services district and residential in the Limited Forest/Agricultural districts. Directly east of the site, in the Neighborhood Commercial district, are several commercial buildings currently vacant. Northeast of the site are several residential SF10 districts. This [rezoning] will also require a text amendment allowing mining in the [Commercial Agriculture] District. The Envision 2025 Plan denotes this area as a Rural Area, *intended to support compatible residential and commercial development at current zoning and to promote the rural lifestyle found throughout these areas*.

ECF No 41-4 (emphasis in original). Horry County Council approved the rezoning request and deemed mining a conditional use on the rezoned property. Horry County Ordinances 06-17 and 13-17.

## IV.    Denial of the Horry County Mine Permit

Following the rezoning of the Property, and after a thorough review of RBR's proposed mining operation, DHEC issued a mine operating permit on August 16, 2017. The DHEC permit grants RBR "the right to conduct active mining operations" within the Property, *see* ECF No 41-5 at 6, subject to conditions in the permit, including RBR obtaining all other necessary "State and Federal permits." *Id.* at 4, 8-12.

On April 3, 2017, while its mine permit application with DHEC was pending, and having satisfied the requirements of the Horry County Mine Zoning Ordinance, RBR filed an application with Horry County for a mining permit pursuant to the Horry County Mine Permit Ordinance. The Horry County Mine Permit Ordinance calls for public notice and hearing, after which the request for a mining permit is approved or denied by resolution. *Id.* § 62. The decision to approve or deny a request is purportedly based on (1) the adequacy of the transportation network, and (2) compatibility with the surrounding community. *Id.* § 63. Horry County Council voted to deny RBR's mining permit application first on October 17, 2017, and again on March 20, 2018.

## V.    Post-Litigation Amendments to the Horry County Mine Permit Ordinance and the Horry County Mine Zoning Ordinance

On June 5, 2018, following its second denial of Plaintiffs' permit application, Horry County Council passed Horry County Ordinance 38-18, amending both ordinances at issue in this case. The ordinances now require compliance with the Horry County Mine Permit Ordinance before a landowner may qualify for mining as a conditional use under the Horry County Mine Zoning Ordinance. As stated above, at the time Plaintiffs were allegedly aggrieved, the Horry

County Mine Zoning Ordinance stated in relevant part that "[a]ll other mining activity shall be allowed only as a conditional use in the AG1, AG2, FA and CFA zoning districts subject to the following conditions . . . ." Horry County Code of Ordinance, app'x B, art V, § 532(4). Obtaining a mining permit from Horry County Council was not one of the conditions listed. *See* Horry County Ordinance 38-18. The amendment on June 5, 2018, however, added Subparagraph 532(4)(h) to the Horry County Mine Zoning Ordinance. Now, the Horry County Mine Zoning Ordinance states, as a condition placed on conditional use, that "[m]ines are required to obtain a Mining Permit from Horry County Council." *Id.*

This cross-reference is relevant to the Court's determination where (1) the Mining Act only saves "*zoning* ordinances and regulations" from preemption, S.C. Code Ann. § 48-20-250 (emphasis added), and (2) all conditions and restrictions placed on conditional uses of property must be set forth "in the text of the zoning ordinance." S.C. Code Ann. § 6-29-720(C)(6).

After a thorough review of the record, the Court finds that DHEC possesses exclusive authority over mine permitting, and the Mining Act preempts the Horry County Mine Permit Ordinance, both before and after the ordinance was amended.[3] The Horry County Mine Permit Ordinance (1) conflicts with DHEC's exclusive authority in this area, and (2) purports to give

---

[3] The parties disagree regarding the propriety of a declaratory judgment regarding the ordinances as they existed when RBR's mine permit applications were denied, where both ordinances have since been amended. Specifically, Defendants assert that the Court may only render a declaration with respect to the ordinances as they exist at the time it issues this Order. ECF No. 42 at 6. While the United States Supreme Court acknowledges that the "repeal, expiration, or significant amendment to challenged legislation" renders a request for *injunctive* relief moot, *see Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) (citations omitted), the same does not apply to a request for declaratory judgment, when such relief is a predicate to a claim for damages suffered, and not merely sought for prospective relief. *See id.* at 929 ("We recognize that a defendant's change in conduct cannot render a case moot so long as the plaintiff makes a claim for damages."); *see also Grimm v. Gloucester Cty. Sch. Bd.*, No. 4:15-CV-54, 2017 WL 9882602, at *3 (E.D. Va. Dec. 12, 2017) ("[T]he Court finds that because Plaintiff's claim for damages rests upon a determination of the constitutionality of the complained-of action, his claim for retrospective declaratory relief is not moot.") (citing *Powell v. McCormack*, 395 U.S. 486 (1969)).

Horry County Council the right to issue permits separate and apart from its authority to pass non-conflicting zoning ordinances regulating conditional land use. The purpose and effect of the Horry County Mine Permit Ordinance is an impermissible veto power over DHEC decisions wielded by Horry County Council. The Court likewise finds that the Horry County Mine Zoning Ordinance is preempted to the extent that, after its amendment, it incorporates the Horry County Mine Permit Ordinance's requirements.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.

*Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The issue of preemption is a question of law for the Court to decide. *See Weston v. Kim's Dollar Store*, 684 S.E.2d 769, 777 (S.C. Ct. App. 2009), *aff'd*, 731 S.E.2d 864 (S.C. 2012).

## DISCUSSION

The powers of local governments in South Carolina are to be liberally construed. *Aakjer v. City of Myrtle Beach*, 694 S.E.2d 213, 215 (S.C. 2010) (citing S.C. Const. art. VIII, § 17). A local ordinance is presumed to be constitutional, and the party challenging an ordinance bears the burden of proving its invalidity. *Id.* (citing *S. Bell Tel. & Tel. Co. v. City of Spartanburg*, 331 S.E.2d 333, 334 (S.C. 1985)). While "[l]ocal governments have wide latitude to enact ordinances regulating what people can do with their property," they must, however, "draft their ordinances so that people can have a clear understanding as to what is permitted and what is not." *Keane/Sherratt P'ship by Keane v. Hodge*, 357 S.E.2d 193, 196 (S.C. Ct. App. 1987). Otherwise, a court "must construe such ordinances to allow people to use their property so as to realize its highest utility." *Id.* In determining whether an ordinance is valid, a court asks (1) whether the local government had the power to enact the ordinance, and if so (2) whether the ordinance is consistent with the constitution and general law of South Carolina. *Beachfront Entm't, Inc. v. Town of Sullivan's Island*, 666 S.E.2d 912, 913 (2008) (citing *Diamonds v. Greenville County*, 325 S.C. 154, 480 S.E.2d 718 (1997)).

Plaintiffs do not argue that Horry County lacked the power to enact the Horry County Mine Permit Ordinance or the Horry County Mine Zoning Ordinance; rather, they contend that (1) both ordinances are preempted by the Mining Act, and (2) the Horry County Mine Permit Ordinance is invalid because it is inconsistent with the Planning Enabling Act.

I.    **The Horry County Mine Permit Ordinance is Expressly Preempted, Because it Seeks to Exercise Authority that the Legislature Delegated to DHEC. Further, the Horry County Mine Permit Ordinance is not Saved by S.C. Code Ann. § 48-20-250 Where it is Not a Zoning Ordinance and is Otherwise in Direct Conflict with the Mining Act.**

The Court finds that the Mining Act expressly preempts the Horry County Mine Permit Ordinance both before and after its amendment on June 5, 2018. First, the Horry County Mine Permit Ordinance facially seeks to delegate to Horry County Council authority that the General Assembly expressly delegated exclusively to DHEC. Second, while the Mining Act contains a savings clause that preserves localities' power to enforce non-conflicting zoning ordinances, the Horry County Mine Permit Ordinance cannot reasonably be read to constitute a zoning ordinance, and even if it could, it would still be in direct conflict with the Mining Act for the same reason it is expressly preempted.

A.    **Because the Mining Act Vests DHEC with Exclusive Authority to Issue Mining Permits, the Horry County Mine Permit Ordinance is Expressly Preempted.**

Local governments are expressly preempted from issuing mine permits where the Mining Act exclusively vests DHEC with that authority.

"Express preemption occurs when the General Assembly declares in express terms its intention to preclude local action in a given area." *Sandlands v. C & D, LLC v. County of Horry*, 716 S.E.2d 280, 286 (S.C. 2011) (quoting *S.C. State Ports Auth. v. Jasper County*, 629 S.E.2d 624, 628 (S.C. 2006)). The Interstate Mining Compact provides in part that "[t]he *states* are in a position

and have the responsibility to assure that mining shall be conducted in accordance with sound conservation principles, and *with due regard for local conditions*." S.C. Code Ann. §48-21-10 (emphasis added). Consistent with this recognition, the Mining Act declares DHEC "responsible for administering the provisions of this chapter. This includes the process and *issuance of mining permits* . . . ." S.C. Code Ann. § 48-20-30 (emphasis added). The legislature further granted DHEC "ultimate authority . . . over all mining . . . and the provisions of this chapter regulating and controlling such activity," subject only to the appeal provisions of the Mining Act. *Id.* § 48-20-30.

Defendants urge the Court to uphold the ordinance under the reasoning in *Sandlands*, but the case strongly suggests that the Supreme Court of South Carolina would find the Horry County Mine Permit Ordinance expressly preempted. In *Sandlands*, the South Carolina Supreme Court held that the Solid Waste Policy and Management Act, S.C. Code Ann. §§ 44-96-10 to -235, did not preempt a local ordinance. *Sandlands*, 716 S.E.2d at 291. The state statute at issue, among other things, granted DHEC the authority to issue permits to construct solid waste management facilities. *Id.* at 286 (citing S.C. Code Ann. § 44-96-290(E) ("No permit to construct a new solid waste management facility . . . may be issued until a demonstration of need is approved by the department.")). The challenged county ordinance established such a facility, which was permitted by DHEC, and required that all solid waste be deposited at the county's facility, or a facility designated by the county. *Id.* at 284. In holding that the county permissibly regulated the *flow* of solid waste within the county, the South Carolina Supreme Court stated that the county would have been expressly prohibited from issuing *permits*. *Id.* at 286. The court found there was "no doubt the express language" of S.C. Code Ann. § 44-96-290(E) "provides for DHEC's exclusive authority in the area of *permitting*." *Sandlands*, 716 S.E.2d at 286 (emphasis in original).

12

The Mining Act contains language substantially similar to the state statute discussed in *Sandlands*. Specifically, S.C. Code Ann. § 48-20-60 provides that "[n]o operating permit may be issued except in accordance with the procedures set forth in Section 48-20-70. No operating permit may be modified except in accordance with the procedures set forth in Section 48-20-80 or 48-20-150." The statement in *Sandlands* regarding the effect of S.C. Code Ann. § 44-96-280(E) and the intent of the legislature embodied by that statute leads the Court to conclude that the Mining Act expressly preempts the Horry County Mine Permit Ordinance.

The court in *Sandlands* distinguished the permissible activity of regulating flow from the impermissible activity of permitting, and unlike the defendant in *Sandlands*, Defendants' challenged activity here is permitting. The Court therefore finds the Horry County Mine Permit Ordinance expressly preempted by the Mining Act.

**B.      Horry County has Exercised its Authority to Regulate Land use Within the Bounds of State Law, but the Horry County Mine Permit Ordinance Exceeds the Mining Act's Savings Clause.**

S.C. Code Ann. § 48-20-250 carves out an exception to the preemptive effect of the Mining Act for (1) *zoning ordinances* that are (2) not in direct conflict with the Mining Act. *Id.* The Court finds that Horry County properly exercised the authority reserved to it when it adopted the Horry County Mine Zoning Ordinance within Horry County's authority delegated by the Planning Enabling Act. The Horry County Mine Permit Ordinance, however, exceeds the scope of the Mining Act's savings clause. The General Assembly could not have intended to delegate to localities the authority to invalidate the purpose and effect of a state issued permit simply where the county calls its law a zoning ordinance.

Local governments have made similar attempts to frame ordinances to fall within a state statute's savings clause and failed. In *EQT Prod. Co. v. Wender*, 870 F.3d 322 (4th Cir. 2017), the

Fourth Circuit held that a county ordinance purporting to regulate wastewater disposal was preempted by the state's complex regulatory scheme governing wastewater injection wells. *Id.* at 332. In *Wender*, a county in West Virginia enacted an ordinance banning the permanent disposal of wastewater. *Id.* The plaintiff, an operator of natural gas extraction wells, held a permit from a state agency to engage in precisely the activity that the county ordinance prohibited. *Id.* The statutory scheme under which the plaintiff's permit was issued contained the following savings clause: "[N]othing herein contained shall abridge or alter rights of action or remedies . . . nor shall any provisions . . . be construed as estopping . . . municipalities . . . in the exercise of their rights to suppress nuisances or to abate any pollution." *Id.* at 333 (quoting W. Va. Code § 22-11-27). The county attempted to justify its ordinance as a permissible suppression of nuisances and pollution, which it had a preexisting right to regulate. *Id.* The Fourth Circuit rejected the county's broad reading of the savings clause and reasoned that , "absent express language clearly vesting in localities what may be termed the veto power against the issuance of particular licenses," it would not infer a right to "nullify" state permits from a "general grant of authority to a locality, and not even from a grant of power covering licensing itself." *Id.* at 334 (quoting *Brackman's Inc. v. City of Huntington*, 27 S.E.2d 71, 78 (W.Va. 1943)) (internal quotations and alterations omitted). The court gave the savings clause "its more logical reading–not as a self-defeating instrument for nullification of state permits," but as a clarification that "possession of a state permit will not preclude all local regulation touching on the licensed activity." *Id.* at 334-35 (citations omitted).

South Carolina courts, like those in West Virginia, do not allow localities to exercise a "veto power" over determinations made by state agencies pursuant to statutorily delegated duties. *See Southeast Resource Recovery, Inc. v. S.C. Dep't of Health & Envtl. Control*, 595 S.E.2d 468, 471 (2004) (holding that county had "no veto authority over decisions made by DHEC."). The

General Assembly therefore could not have intended, by enacting S.C. Code Ann. § 48-20-250, to authorize localities to implement independent permitting schemes, capable of nullifying the "right[s]" granted by state permits, *see* ECF No. 41-5 at 5 ("[T]his permit grants the operator the right to conduct active mining operations within the specified affected land . . . ."), justified only by such schemes' conclusory characterization as a zoning ordinance. *See EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 583, 602 (noting that the savings clause at issue could not be read to allow a county to "unilaterally prohibit conduct that federal and state law both expressly permit.").

The General Assembly set out the manner in which localities could regulate land use. Specifically, the legislature delegated the power to enact zoning ordinances, *see* S.C. Code Ann. § 6-29-720, as distinct from ordinances enacted pursuant to local governments' broad police power. *See* S.C. Code Ann. § 4-9-25.[4] Horry County understood its zoning power and, in fact, enacted zoning ordinances to regulate which land could be used for mining. The legislature did not intend to reserve for local county councils a veto power over permits authorized by DHEC. Here, Horry County Council sought to issue mine permits and to enable itself to deny landowners the ability to engage in activity that they otherwise had a right to engage in under state law and the provisions of the Horry County zoning ordinance.

The Court notes that Horry County properly exercised its authority to regulate mining through its zoning ordinance. To qualify for conditional use of land as a mine, a landowner must adhere to numerous requirements set forth in the Horry County Mine Zoning Ordinance. These

---

[4] This Section, titled "Powers of counties," provides in part as follows:

> All counties of the State, in addition to the powers conferred to their specific form of government, have authority to enact regulations, resolutions, and ordinances, not inconsistent with the Constitution and general law of this State, including the exercise of these powers in relation to health and order in counties or respecting any subject as appears to them necessary and proper for the security, general welfare, and convenience of counties or for preserving health, peace, order, and good government in them.

requirements appear to be designed to ensure that mines create no more impact to the surrounding community than reasonably necessary. *See* Horry County Code of Ordinance, app'x B, art. V, § 532(4)(a)-(b) (road maintenance and dust control); § 532(4)(c) (requiring natural vegetation screens and buffers along property lines); § 532(4)(d) (requiring submission and approval of traffic routing plan that details impacts to surrounding residences to the greatest extent reasonably possible); § 532(4)(e) (limiting hours of operation). These regulations appear to the Court to be precisely the kind that the General Assembly intended to save from preemption through the language in S.C. Code Ann. § 48-20-250.

Plaintiffs submit, and Defendants do not contest, that the proposed mine on the Property satisfied the conditional use preconditions set forth in the Horry County Mine Zoning Ordinance. Plaintiff submitted traffic and stormwater plans to the appropriate departments in Horry County, and those departments concluded that Plaintiffs' plans were satisfactory. ECF No. 40-1 at 17. Horry County's Infrastructure and Regulation Committee recommended that a Horry County mine permit be issued in accordance with the terms and conditions established for the mine by DHEC. *Id.*

In contrast to the detailed requirements set forth in the Horry County Mine Zoning Ordinance, the Horry County Mine Permit Ordinance states that Horry County Council shall "consider the adequacy of the transportation network and the compatibility with the surrounding community in determining whether the request [for a mine permit] should be approved or disapproved." *Id.*, ch. 13, art. VI, § 63. These considerations are wholly accounted for by the conditions already enumerated in the Horry County Mine Zoning Ordinance, and in fact the county properly considered the compatibility of mining with the surrounding community when the land was rezoned under the procedure set forth in the county's zoning ordinance. ECF No. 41-4. Simply

arguing that the Horry County Mine Permit Ordinance is a permissible non-conflicting zoning ordinance because the criteria to be considered echo permissible purposes of zoning ordinances does nothing to cure its defects. Whereas the Horry County Mine Zoning Ordinance is a zoning ordinance that defines where and how a landowner may engage in mining as a conditional use, the Horry County Mine Permit Ordinance directly regulates only the *activity* of mining under Defendants' police power.

The Wisconsin case of *Zwiefelhofer v. Town of Cooks Valley*, 809 N.W.2d 362 (Wis. 2012) emphasized the distinction between police power and zoning authority and held that a mine permit ordinance very similar to Defendants' was not a zoning ordinance. "Although zoning ordinances are enacted under a municipality's police power, all ordinances enacted under the police power are not zoning ordinances." *Id.* at 365. The plaintiffs in *Zwiefelhofer* sought a declaration that a town's nonmetallic mining ordinance was invalid, where the ordinance did not have the county board's approval as required by statute. *Id.* at 369. The ordinance at issue purported to regulate, among other things, the location of nonmetallic mines to further appropriate use and conservation of land. *Id.* at 367. In furtherance of these stated goals, the ordinance required a permit for the operation of a nonmetallic mine. *Id.* In deciding whether to issue a permit, the town's planning commission reviewed applications, and distributed the same to adjoining landowners. The planning commission then made a recommendation to the town board, who considered the recommendation at a public hearing. *Id.* Conditions could be imposed on a permit, including those for hours of operation and traffic volume near the proposed mine. *Id.* The Supreme Court of Wisconsin, in a thoroughly reasoned analysis, held that the nonmetallic mining ordinance was an exercise of the town's police power, not its zoning power. *Id.* at 379. In support of its conclusion, the court found that (1) unlike traditional zoning ordinances, the ordinance did not apply to particular districts but

applied universally to all land; (2) the ordinance did not permit or prohibit anything as of right, but merely created the potentiality of permitting or conditional permitting; (3) the ordinance did not directly control the location of mines, rather, it licensed mining based on the nature of the activity;[5] (4) unlike traditional zoning ordinances that "endeavor to address and organize comprehensively[6] all potential land uses" to separate "incompatible uses," the ordinance applied only to mining; (5) the ordinance operated exclusively on a case-by-case basis; and (6) the ordinance "grandfathered" preexisting mines. *Id.* at 374-77. Considering the foregoing, the Court concluded that although the ordinance's "purpose overlaps with the purposes of zoning," it was an exercise of *police power*, not zoning power.

All but the last factor considered by the court in *Zwiefelhofer* apply with equal force to the Horry County Mine Permit Ordinanceand lead the Court to conclude that the Horry County Mine Permit Ordinance is an exercise of general police power pursuant to S.C. Code Ann. § 4-9-25, not the zoning power delegated by the Planning Enabling Act. The same is not true of the Horry County Mine Zoning Ordinance, which independently and properly regulates land use within the structure of the Planning Enabling Act. Only the former ordinance, therefore, is subject to the savings clause in S.C. Code Ann. § 48-20-250.

### C.    The Horry County Code Demonstrates that the Horry County Mine Permit Ordinance is not a Zoning Ordinance.

---

[5] "While zoning regulates use based on location, licensing regulates the type of activity conducted wherever it might be located." *Zwiefelhofer*, 908 N.W.2d at 374 n.40 (quoting 1 E.C. Yokley, *Zoning Law and Practice* § 2-1 (4th ed. 1978).

[6] The *Zwiefelhofer* court placed emphasis on use of the word "comprehensive" as used in the Wisconsin zoning statute. *See* Wis. Stat. § 62.23(7)(c) ("[Zoning] regulations shall be made in accordance with a *comprehensive* plan . . . .") (emphasis added). The South Carolina zoning statutes are in accord: "[A] municipality or county may adopt a zoning ordinance to help implement the *comprehensive* plan." S.C. Code Ann. § 6-29-720(A) (emphasis added). "The word 'comprehensive' as used in the zoning statute and the literature does not ordinarily refer to an ordinance that thoroughly . . . regulates a single activity. The phrase ordinarily refers to an ordinance that addresses what classes of activities might be pursued in geographical areas." *Zwiefelhofer*, 809 N.W.2d at 375.

Defendants argue that the Horry County Mine Permit Ordinance can qualify under S.C. Code Ann. § 48-20-250 as a zoning ordinance because, although the permit requirement is not literally in the county's zoning ordinance, the criteria considered by Horry County Council in granting or denying a permit application, *i.e.*, the "adequacy of the transportation network" and "compatibility with the surrounding community," Horry County Code of Ordinance, ch. 13, art. VI, § 63, amount to proper zoning considerations. *See* S.C. Code Ann. § 6-29-710 (enumerating permissible purposes for zoning ordinances). This interpretation is unpersuasive, where Defendants seek to characterize the Horry County Mine Permit Ordinance a zoning ordinance for the purpose of preemption alone. Virtually all other characteristics of the Horry County Mine Permit Ordinance constitute convincing evidence that it cannot meet the preemption exception of S.C. Code Ann. § 48-20-250. The county appears not to have intended the Horry County Mine Permit Ordinance to be a zoning ordinance.

Defendants' counsel asserts that the Horry County Mine Permit Ordinance allows the Horry County Council to have the final word on whether or not a landowner may operate a mine as a conditional use and states that the ordinance is appropriate where mining carries with it substantial impact to the surrounding community. This argument fails where Horry County's own zoning ordinance places this determination with the Zoning Administrator by requiring certificates of zoning compliance. Horry County Code of Ordinance, app'x B, art. XIII, § 1304, provides that "[c]onditional uses . . . are declared to possess characteristics which require certain controls in order to insure compatibility with other uses in the district within which they are proposed for location." In light of this declaration, conditional uses in Horry County "shall be permitted" when the Zoning Administrator, not Horry County Council, certifies that a proposed conditional use "conform[s] to all regulations set forth" in the Horry County zoning ordinance. *Id.* §§ 1303(A),

1304(A). In addition, Horry County Code of Ordinance, app'x B, art. IV, § 402 vests the Zoning Administrator, not the Council, with the responsibility of issuing all "permits" required by the Horry County zoning ordinance. Horry County Council's issuance of a permit is therefore indicative that such permit is not required by the zoning ordinance.

### D.    The Location of the Horry County Mine Permit Ordinance within the Horry County Code of Ordinance Tends to Prove that it is Not a Zoning Ordinance.

The Horry County Mine Permit Ordinance, prior to its amendment, was not even referenced in the "Zoning Ordinance of Horry County, South Carolina" as the county itself defines that term. *See* Horry County Code of Ordinance, app'x B, art. II; *see also Town of Hilton Head Island v. Fine Liquors, Ltd.*, 397 S.E.2d 662, 663 (S.C. 1990) (finding that an ordinance was "clearly a land use ordinance" where it was actually located in the locality's self-designated "Land Management Ordinance"). The Horry County Mine Permit Ordinance and the Horry County Mine Zoning Ordinance both became law on the same day; the fact that one is found within the zoning ordinance and one is not is probative on the question of which intended to be a zoning ordinance.

Defendants argue that the entirety of the Horry County Code should be read together and that the organization of the code is essentially irrelevant. In support of this proposition, Defendants cite Horry County Code of Ordinance, ch. 1, § 3, which states that "[t]he catchlines of the several sections . . . are intended as mere catchwords to indicate the contents of the section and shall not be deemed or taken to be titles of such sections . . . ." The Court rejects this argument, where this provision specifically references "sections," and not "articles," "chapters," or "appendices," and the county otherwise explicitly deemed Appendix B to be known as "The Zoning Ordinance of Horry County, South Carolina." *Id.* app'x B, art. II. Further, accepting Defendants' position would render the General Assembly's intent–that conditions placed on conditional uses must appear in "the text of the zoning ordinance"–a nullity. *See* S.C. Code Ann. § 6-29-720(C)(6).

The Horry County Mine Permit Ordinance, prior to the June 5, 2018 amendments, *see* Horry County Ordinance 38-18, existed only in Chapter 13, entitled "Offenses and Miscellaneous Provisions." *See* Horry County Code of Ordinance, ch. 13, art. VI, §§ 60-66. It cannot properly be considered a zoning ordinance simply because it may further similar purposes to those furthered by zoning ordinances.

**E.    The Appeal Provisions of the Horry County Mine Permit Ordinance Indicate that it is Not a Zoning Ordinance.**

The applicable appeals procedure for the Horry County Mine Permit Ordinance also indicates that Defendants did not intend for the Horry County Mine Permit Ordinance to be considered a zoning ordinance. Under the Horry County Mine Permit Ordinance, appeals of adverse permitting decisions must be taken, if at all, to the circuit court within thirty (30) days of Horry County Council's decision to grant or deny a permit application. Horry County Code of Ordinance ch. 13, art. VI, § 65. If the Horry County Mine Permit Ordinance were a zoning ordinance, the Zoning Administrator would make conditional use determinations in the first instance, *id.* app'x B, art. XIII, §§ 1303, 1304, and appeals would be required to be taken to the Board of Zoning Appeals established by Horry County, *see id.* app'x B, art. XIV, § 1400, 1404, for the purpose of "enforc[ing] the zoning ordinance." S.C. Code Ann. § 6-29-780; *see also* Horry County Code of Ordinance, app'x B, art. XIII, § 1309 (setting forth "the intention of this ordinance that all questions arising in connection with the enforcement of this ordinance shall be presented first to the Zoning Administrator and that such questions shall be presented to the Board of Zoning Appeals only on appeal from the decision of the Zoning Administrator . . . .").

**F.    If the Horry County Mine Permit Ordinance were a Zoning Ordinance, it Would be Subject to the Planning Enabling Act.**

Finally, the record contains additional evidence that the Horry County Mine Permit Ordinance is not a zoning ordinance. ECF Nos. 44-1, 44-2. On November 2, 2017, after Horry County Council denied RBR's mine permit application for the first time, Plaintiff's counsel requested a reconsideration of the resolution, or in the alternative, that the county agree to participate in pre-litigation mediation pursuant to the Planning Enabling Act. *See* S.C. Code Ann. § 6-29-825; ECF No. 44-1. Arrigo Carotti, County Attorney for Horry County, represented to Plaintiffs' counsel "the County's position" that the Planning Enabling Act did not apply to the Horry County Mine Permit Ordinance. *See* ECF No. 44-2. Such a position is irreconcilable with the Horry County Mine Permit Ordinance being a zoning ordinance.

### G. Amending the Horry County Mine Zoning Ordinance to Cross-Reference the Horry County Mine Permit Ordinance Does Not Save the Latter from Preemption.

On June 5, 2018, after this litigation commenced, the Horry County Mine Zoning Ordinance was amended to include, as a precondition to use of land as a mine, the requirement that a landowner obtain a mine permit in accordance with the Horry County Mine Permit Ordinance. *See* Horry County Ordinance 38-18. The Horry County Mine Permit Ordinance is, however, still in direct conflict with DHEC's exclusive authority to issue mining permits under the reasoning in *Sandlands*. In addition, and in light of all foregoing indicia that the Horry County Mine Permit Ordinance is not a zoning ordinance, simply cross-referencing the mine permit requirement in the Horry County Mine Zoning Ordinance does not thereby make the Horry County Mine Permit Ordinance a zoning ordinance. The Horry County Mine Permit Ordinance still creates a completely redundant procedure whereby Horry County Council is able to make a determination on the propriety of mining that has already been properly made in the context of, and through the procedure set forth in, state law and the Horry County zoning ordinance.

The case of *Southeast Resource Recovery, Inc. v. S.C. Dep't of Health & Envtl. Control*, 595 S.E.2d 468, 470 (S.C. 2004) instructs that local governments do not have the veto power that the Horry County Mine Permit Ordinance gives Horry County Council. In that case, the plaintiff sought to obtain a permit from DHEC to construct a landfill. *Id.* at 469. Issuance of the permit was contingent on, among other things, a determination that the proposed landfill complied with all local zoning ordinances. *Id.* (citing S.C. Code Ann. § 44-96-290(F)). DHEC maintained a practice of delegating determinations of zoning compliance to the counties. *Id.* at 471. Newberry County initially determined that the plaintiff's proposed landfill was compliant with its zoning laws, and DHEC, after concluding that all other requirements were met, issued the plaintiff a permit to construct the landfill. *Id.* at 470. Citizens challenged the issuance of the permit, after which Newberry County revoked its determination of compliance with local zoning ordinances. *Id.* The ALJ concluded that the revocation precluded the plaintiff from receiving the permit, and the circuit court agreed. *Id.* In reversing the circuit court, the Supreme Court of South Carolina held that where DHEC is charged with determining whether a proposed landfill is consistent with zoning laws, the county lacks "veto authority" over decisions made by DHEC. *Id.* at 471.

The Horry County Mine Permit Ordinance enables Horry County Council to unilaterally prevent a landowner from engaging in activity that the state has explicitly authorized and does so outside the county's self-designated zoning scheme. Horry County Council therefore possesses a functional veto power over DHEC's decision to permit a mine.

Although the county is not prohibited from imposing additional regulations that supplement those enacted by the state, *see, e.g.*, *Denene, Inc. v. City of Charleston*, 574 S.E.2d 196, 199 (S.C. 2002), it may not do so through means which are expressly preempted, *see* S.C. Code Ann. § 48-20-30, and not explicitly saved from preemption. *Id.* § 48-20-250. Accordingly,

the Court finds the Horry County Mine Permit Ordinance expressly preempted by the Mining Act, both before and after its amendment on June 5, 2018.

II.     **The Horry County Mine Permit Ordinance was Invalid at the Time Plaintiffs were Allegedly Aggrieved, Because it Placed Conditions on the Use of Land as a Mine Outside the Text of the Zoning Ordinance.**

Prior to the June 5, 2018 amendments to the Horry County Mine Zoning Ordinance, Defendants exceeded their statutory authority to regulate land use, granted by the South Carolina Local Government Comprehensive Planning Enabling Act of 1994, S.C. Code Ann. §§ 6-29-310 to -1640 ("Planning Enabling Act"), by imposing conditions on the use of land as a mine in the Horry County Mine Permit Ordinance, which were outside of the text of the Horry County zoning ordinance. S.C. Code Ann. § 6-29-720(C)(6). Accordingly, the Horry County Mine Permit Ordinance was inconsistent with the laws enacted by the state, and was invalid at the time Plaintiffs were allegedly aggrieved.

The Planning Enabling Act delimits the authority of local governments to regulate land use for the "general purposes of guiding development in accordance with existing and future needs and promoting the public health, safety, morals, convenience, order, appearance, prosperity, and general welfare." S.C. Code Ann. § 6-29-710. It further provides techniques for achieving these goals, one of which involves "conditional use" provisions that "impose conditions, restrictions, or limitations" on a permitted use above and beyond those applicable to all land in the zoning district. Id. § 6-29-720(C)(6). When this technique is utilized, "[t]he conditions, restrictions, or limitations *must be set forth in the text of the zoning ordinance*." *Id.* (emphasis added). Applying the plain and ordinary meaning of § 6-29-720(C)(6), the General Assembly clearly intended that, where a local government decides to utilize conditional use methodology for regulating land use, all conditions precedent to such use must appear in the text of the "zoning ordinance," as opposed to some other

24

ordinance. Horry County Council determined that Appendix B of the Horry County Code "shall be known and may be cited as 'The Zoning Ordinance of Horry County, South Carolina.'" Horry County Code of Ordinance, app'x B, art. II. Defendants comply with the mandate of the Planning Enabling Act in other respects. For example, the Horry County Mine Zoning Ordinance is found within Article V of Appendix B. The provisions of the Horry County Mine Zoning Ordinance state that "mining activity *shall be allowed* only as a *conditional use* . . . subject to the *following conditions* . . . ." Horry County Code of Ordinance, app'x B, art. V, § 532(4) (emphasis added). Prior to the amendments on June 5, 2018, compliance with the Horry County Mine Permit Ordinance was not listed as one of these conditions. The Horry County Mine Permit Ordinance was not referenced in, nor were its conditions, limitations, and restrictions set forth in, Horry County's zoning ordinance. The pre-amendment Horry County Mine Permit Ordinance was therefore inconsistent with S.C. Code Ann. § 6-29-720(C)(6).

The addition of subsection 532(4)(h) to the Horry County Mine Zoning Ordinance, *see* Horry County Ordinance 38-18, cured the Horry County Mine Permit Ordinance's deficiency under the Planning Enabling Act. The reference to the conditions and restrictions of the Horry County Mine Permit Ordinance now exists and is set forth within the text of the Horry County Mine Zoning Ordinance, which is within the Horry County zoning ordinance. The requirement of S.C. Code Ann. § 6-29-720(C)(6) is therefore satisfied.

III.    **The Horry County Mine Zoning Ordinance is Preempted to the Extent that it Requires Landowners to Obtain a Mine Permit from Horry County Council.[7]**

The amended version of the Horry County Mine Zoning Ordinance contains the condition that a landowner must obtain a mine permit from Horry County Council before the zoning

---

[7] Plaintiffs' counsel clarified during the hearing on this matter that Plaintiffs only seek a declaration that the Horry County Mine Zoning Ordinance is preempted to the extent that it incorporates the requirements of the Horry County Mine Permit Ordinance.

administrator may issue a certificate of zoning compliance. Horry County Code of Ordinance, app'x B, art. V, § 532(4)(h) and art. XIII, § 1303 (zoning administrator to issue certificate of zoning compliance). In other words, the amended Horry County Mine Zoning Ordinance requires landowners–by simple cross-reference–to submit to Horry County Council's non-zoning veto power over DHEC's decision to permit mining operations on specified land. Having already concluded that the Horry County Mine Permit Ordinance is expressly preempted by the Mining Act, the Horry County Mine Zoning Ordinance is inexorably preempted to the extent that it requires compliance with the Horry County Mine Permit Ordinance. The cross-reference appears to be little more than an attempt to characterize the permit requirement as a zoning ordinance, an attempt which necessarily fails considering all foregoing indicia to the contrary.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment, ECF No. 40, in part, and DECLARES that Horry County Code of Ordinance, ch. 13, art. VI, §§ 60-66 is preempted by the Mining Act, S.C. Code Ann. §§ 48-20-10 to -310, both before and after the ordinance was amended on June 5, 2018, by Horry County Ordinance 38-18. The Court further DECLARES that Horry County Code of Ordinance, app'x B, art. V, § 532(4)(h) is likewise preempted by the Mining Act. Plaintiffs' motion is denied in all other respects. Defendants' Motion for Partial Summary Judgment, ECF No. 39, is GRANTED in part, as the remainder of Horry County Code of Ordinance, app'x B, art. V, § 532 that is not preempted as set forth herein is a proper exercise of Defendants' zoning authority.

IT IS SO ORDERED.

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge

April 15, 2020

Florence, South Carolina